UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:18-cv-437

| | |
|---|---|
| CHARLOTTE JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| CITY OF GREENSBORO, North Carolina, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PREAMBLE

**COMES NOW** Plaintiff, Charlotte Jackson, and submits this Complaint against Defendant, City of Greensboro, North Carolina as follows:

1. This action is brought against Defendant City of Greensboro, North Carolina, by Plaintiff Charlotte Jackson, a former employee, for the City's violation of her rights as follows:

a) Title 42 USC § 1983, for Defendant's violation of the Due Process and Equal Protection clauses contained in the Fourteenth Amendment of the United States Constitution;

b) Article 1, Section 19 of the North Carolina State Constitution for depravation of Plaintiff's Due Process rights, as well as Liberty and/or Property rights.

## PARTIES, JURISDICITON AND VENUE

1. Plaintiff is a citizen and resident of Guilford County, North Carolina.

2. Plaintiff is currently a Law Enforcement Officer within the State of North Carolina and was a Greensboro Police Officer from January 3, 2011 until the violation of her rights by Defendant forced her to resign on or about September 29, 2016. She suffered loss of income, mental anguish and emotional distress as a result of Defendant's actions as described further herein.

3. The Unites States District Court for the Middle District of North Carolina has jurisdiction over the parties and subject matter in this action. Venue is proper in this Court.

4. Upon information and belief, Defendant has affirmatively waived the defense of Sovereign Immunity through the purchase of liability insurance by virtue of participation in a Local Government Risk Pool, or by Local Ordinance waiving its right to not be sued under certain circumstances or through the purchase of liability insurance.

5. Alternatively, if not primarily, the Doctrine of Sovereign Immunity is inapplicable to this case as Plaintiff's claims arise almost entirely under the State and Federal Constitutions.

6. This Action has been instituted within the applicable Statutes of Limitation and repose.

7. There is no requirement for Plaintiff to exhaust administrative remedies with respect to her claims against the City. Moreover, there is no administrative remedy available to Plaintiff.

# FACTS

8. Plaintiff began employment with the City of Greensboro in its 92nd Police Basic Introductory Course on July 1, 2010. She was sworn in as a Police Officer on January 3, 2011 and successfully completed field training on or about April 2011. During her entire tenure with Greensboro Police Department she received excellent evaluations and was highly thought of by her peers.

9. In addition, she sought and received various certifications to better serve the citizens of Greensboro and Greensboro Police Department. These certifications include:

- Chemical Analyst Permit;
- Radar Operation;
- DWI detection and Standard Field Sobriety testing;
- Police Training Officer, and;
- Law Enforcement Bicycle Association

10. In addition, Plaintiff continually educated herself in her field by attending the following:

- Police Law Institute;
- Advanced Patrol Interview Techniques, and;
- Interrogation and Officer Survival

11. On or about June 17, 2016, Plaintiff and another officer responded to 2 Mistywood Court in Greensboro with respect to a suspicious subject. The nature of the call was that an individual was attempting to break into the residence by means of a shovel.

12. Plaintiff arrived first on scene and encountered Dejuan Yourse. Yourse was aware at that time that he had two warrants for his arrest. In addition, Yourse was aware that he was not welcome at 2 Mistywood Court, his mother's residence, because he had attempted to break in on prior occasions and because of his erratic and violent behavior.

13. Jackson was assisted by another officer. During their encounter with Mr. Yourse, Yourse told a variety of lies and untruths to include that his dog was inside the house, that his mother was on her way home, and about his identity. At some point in the interaction, Mr. Yourse became agitated, and the second officer on scene became involved in a struggle with Mr. Yourse. Jackson assisted the Officer in arresting Yourse. Body worn cameras utilized by the officers captured some of the incident.

14. The detention and arrest of Yourse was lawful and justified.

15. After the incident, per its normal procedures, the Greensboro Police Department conducted an internal investigation.

16. During the investigation, Mr. Yourse admitted that he knew warrants existed for his arrest at the time, and he realized he was not supposed to be at his mother's house.

17. The mother of Mr. Yourse informed police that she was scared of her son, he did not have a key to her house (as he had claimed), and that his behavior had been getting out of control.

18. During the administrative investigation, statements were taken from Jackson and all involved Officers. At one point, a direct Supervisor instructed Jackson to

change some verbiage in her report which he felt further suited what he saw on the body worn camera video. Jackson did as she was ordered and changed the verbiage.

19. During her statements, Jackson told supervisors she felt the other officer had acted lawfully.

20. According to the Department's own directives, internal investigations are to be conducted with "consistency" and "fairness".

21. During the investigation, the second officer on scene elected to resign from the department as, upon information and belief, he realized that he would not get a fair investigation by the Greensboro Police Department.

22. When Jackson was interviewed in internal affairs, she was asked about alleged inconsistencies in her report to include the fact that she did not observe an alleged strike to Mr. Yourse. Ultimately, police supervisors elected to charge Plaintiff with a violation of Departmental Directive 1.5.22(b), "Submissions of Reports". Upon information and belief, this is a minor violation, and normally does not subject the officer to anything more than a potential written reprimand. In fact, a disciplinary chart in GPD's own Directive Manual directs that purported violation of this direction be adjudicated on the division level, for which a written reprimand is the most severe discipline available.

23. The Greensboro Police Department (GPD) Directives also mandated that officers receive a fair hearing whenever a disciplinary allegation is adjudicated, to include the right to present testimony and have a fair and impartial hearing panel.

5

Case 1:18-cv-00437-WO-JEP   Document 1   Filed 05/23/18   Page 5 of 10

24. Following receipt of the administrative investigation, Jackson received notification that she would have a Divisional Level Hearing at which her worst discipline could be written reprimand.

25. Shortly thereafter, upon information and belief, a high-ranking member of the GPD released segments of the body worn camera footage of the second officer on the scene to a City Council member. Although the Commander was aware of the other facts from the incident, he elected not to reveal them. Instead, he released only this partial information.

26. The release of this information was improper, and in violation of GPD Directives regarding release of information in administrative investigations as well as in violation of the Personnel Privacy Act found at N.C.G.S. 160A-168.

27. Upon information and belief, the release of this information to the Council member was done solely for political purposes and in order for this Commander to bolster his attempts to become the next Police Chief.

28. The release of the body worn camera footage garnered significant public interest and media coverage.

29. Following the release of the second officer's body worn cameras, Internal Affairs investigators requested that Jackson consent to release of her own body worn camera footage. Based upon departmental directives and the law, Jackson declined that request.

30. Despite her refusal to authorize the department to release her body worn camera footage, it was released to the Council and ultimately the media.

31. After the release of the body worn camera footage, Deputy Chief James Hinson, who would preside over Jackson's Disciplinary Panel, made numerous statements to the effect that both Officers' actions were inappropriate and wrong with their respect to their interaction with Mr. Yourse.

32. At the time of making these statements, Deputy Chief Hinson knew that there was additional information that inured to the benefit of the Officers, to include the informant's statements made to the mother. However, in order to sensationalize this matter, he choose to omit them.

33. In light of the statements made by Deputy Chief Hinson, Jackson realized she could not get a fair hearing with him as Chair, and requested a change be made to her review panel as it was apparent Deputy Chief Hinson had already made up his mind on the matter.

34. However, that request was summarily denied by the agency.

35. Thereafter, Jackson received notification that she would now be subjected to a Bureau Level Hearing. According to GPD Directives, a Bureau Level Hearing may subject the member to discipline up to and including termination. Scheduling an alleged violation regarding submission of reports for a Bureau Level Hearing was in direct contravention of the Department's own policy, and a clear indication that Jackson would be terminated regardless of the facts or evidence in the case due to the media

7

Case 1:18-cv-00437-WO-JEP   Document 1   Filed 05/23/18   Page 7 of 10

sensationalism that the case had received. In light of that, Jackson had no choice but to resign.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DUE PROCESS
(42 U.S.C. § 1983)

36. Plaintiff repeats, realleges and incorporates herein by reference each and every one of the preceding paragraphs of the Complaint as if specifically set forth herein.

37. Defendant's actions have denied Plaintiff due process of law under the law as mandated by the Fourteenth Amendment to the United States Constitution and as actionable under Title 42 U.S.C. § 1983.

38. Plaintiff has been irreparably injured and/or damaged as a direct and proximate result of the Defendant's actions.

39. Plaintiff seeks compensatory damages from Defendant under § 1983 and other damages as allowed by law.

### SECOND CAUSE OF ACTION
### EQUAL PROTECTION
(42 U.S.C. § 1983)

40. Plaintiff repeats, realleges and incorporates herein by reference each and every one of the preceding paragraphs of the Complaint as if specifically set forth herein.

41. Defendant's actions have deprived Plaintiff of equal protection under Federal law and Defendant's actions under 42 U.S.C. § 1983.

42. On account of that depravation, Plaintiff has been damaged and is entitled to compensatory damages from Defendant.

### THIRD CAUSE OF ACTION
### DUE PROCESS
### (Art. I, § 19 N.C. Const.)

43. Plaintiff repeats, realleges and incorporates herein by reference each and every one of the preceding paragraphs of the Complaint as if specifically set forth herein.

44. Defendant's actions have denied Plaintiff due process of law and equal protection under the law as mandated under Article I Section 19 of the State Constitution.

45. Plaintiff has been injured and/or damaged as a direct and proximate result of the Defendant's actions.

**WHEREFORE**, having complained of Defendant, Plaintiff seeks the following relief:

1. A money judgment in an amount in excess of $25,000.00 against Defendant and in favor of Plaintiff under her First, Second and Third Causes of Action;

2. The award of a reasonable attorney's fee against the Defendant and in favor of Plaintiff as may be allowable under 42 U.S.C. § 1988 and State law;

3. The taxing of all costs against Defendant;

4. The award of pre and post judgment interest;

5. The award of interest and penalties against Defendant as may be allowed by Federal and State statute;

6. A jury trial on all issues so triable; and

7. The award of all such other relief as the Court may deem just and proper.

This the 23rd day of May, 2018.

/s/ William L. Hill
William L. Hill (NCSB #21095)
Attorney for Plaintiff

FRAZIER, HILL & FURY, R.L.L.P.
Post Office Drawer 1559
Greensboro, North Carolina 27402
Telephone: 336-378-9411
Facsimile: 336-274-7358
whill@frazierlawnc.com